# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

| | | |
|---|---|---|
| **ANDRE TYRONE SOUTHALL #399435** | § | |
| | § | |
| **V.** | § | **A-05-CA-342-SS** |
| | § | |
| **MARGO FRASIER, JAMES** | § | |
| **CUNNINGHAM, JAMES KNUTSON,** | § | |
| **MATHEW ARIAS, and ALEX LEO** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Defendants' Motion for Summary Judgment (Document No. 25); and Plaintiff's response thereto (Document No. 43). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Travis County Jail. Plaintiff files this action pursuant to 42 U.S.C. § 1983 alleging on January 2, 2004, at 1:00 a.m. he was beaten by Travis County officers after he was handcuffed and placed in leg restraints. According to Plaintiff, Officer James Cunningham repeatedly stomped Plaintiff's head, requiring Plaintiff to be transported to Brackenridge Hospital for treatment. Plaintiff accuses Sheriff Margo Frasier of allowing Sergeant Alex Leo to destroy the surveillance video and all of the evidence of Plaintiff's beating. Plaintiff sues Sheriff Margo Frasier, James Cunningham, James Knutson, Mathew Arias, and Alex Leo. He seeks $7,000,000.00 in compensatory and punitive damages.

The Court ordered that the defendants be served in this case. Service on Defendant Knutson was returned unexecuted. To date, Plaintiff has not provided the Court with a correct address to serve Defendant Knutson. All other defendants were served and have answered.

Defendants Frasier, Cunningham, Arias and Leo move for summary judgment arguing Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), as they are a collateral attack on his criminal conviction. Defendants explain on January 2, 2004, Plaintiff was brought to the central booking facility of the Travis County Jail. Defendants assert Plaintiff began to argue with and threaten another inmate. Officer Cunningham allegedly told Plaintiff to "back off," and when Plaintiff failed to desist, he was restrained by several officers. Defendants maintain instead of Plaintiff obeying lawful orders, Plaintiff advanced towards the officers and struck Officer Cunningham, grabbing at his face, pushing and pulling him, and causing Officer Cunningham to fall onto the floor. According to Defendants, both Plaintiff and Officer Cunningham required transport to the hospital. As a result of the incident, Plaintiff was charged with assault on a peace officer. He

later pleaded guilty to misdemeanor assault. Defendants contend Plaintiff's allegations necessarily imply that his conviction is invalid and are barred by Heck.

Defendants also argue Plaintiff's claims against Sheriff Frasier and Officer Arias are without merit, because Plaintiff fails to allege they were personally involved in the incident that is the basis of this lawsuit. Defendants maintain Sheriff Frasier cannot be held liable in her supervisory capacity.

With regard to Plaintiff's claims brought against the defendants in their individual capacities, the defendants assert their entitlement to qualified immunity. They argue Plaintiff has not established a violation of his clearly established rights. Alternatively, they argue their actions were objectively reasonable under the circumstances. With respect to Plaintiff's claims against the defendants in their official capacities Defendants argue Plaintiff has failed to identify any official policy, custom or practice, as having caused his injuries.

Defendant Leo denies that he destroyed the surveillance video. He explains he went through several attempts to save the video, but was unable to download the digital recording, which was subsequently lost.

Plaintiff responds that, while asleep in the Travis County Booking Facility on January 2, 2004, he was awakened by a drunk and disorderly inmate cursing and yelling at Plaintiff to get up because he wanted to lay down. Plaintiff asserts he jumped up and told the other inmate to go somewhere else to lay down. Plaintiff admits pointing his finger at the other inmate but denies that he ever touched the inmate. Plaintiff asserts someone came up from behind and grabbed Plaintiff's left arm. Plaintiff asserts he spun around, and Officer Cunningham tried to restrain Plaintiff and take him down. Plaintiff alleges he asked Cunningham what he was doing, but Cunningham never replied and was unsuccessful in his attempts to take Plaintiff down. Plaintiff admits he grabbed Cunningham by the

3

collar. He was then hit from behind by four to five officers. This caused Plaintiff and Cunningham to fall over a cushioned chair. According to Plaintiff, Cunningham landed flat on his back with Plaintiff on top of him, facing Cunningham, and the four to five officers landed on top of Plaintiff's back. Plaintiff denies hitting his head on the floor. After the fall, Cunningham allegedly yelled, "my legs, get him off my legs!" At this point, Plaintiff alleges he was placed in handcuffs and ankle cuffs. Plaintiff asserts Cunningham got out from under Plaintiff and began stomping Plaintiff on the head. Plaintiff alleges the other officers, including Officer Arias, started to beat Plaintiff in the back and legs and choke Plaintiff. As a result, Plaintiff alleges he was taken to Brackenridge Hospital where he received five stitches to his left eye brow and other treatment for injuries to his head, ear, jaw, neck and back.

Plaintiff contends the surveillance video would have shown that Plaintiff was compliant and cooperative and, after Plaintiff and the other officers went over the chair, Plaintiff totally submitted. He allegedly stated, "it's cool, it's cool," while he was being restrained. Plaintiff argues the destruction of the video was intentional, and he is entitled to a presumption that the spoliation of evidence would have been harmful to the defendants' case.

## ANALYSIS

A.   Defendant Knutson

Plaintiff has not provided the Court with a correct address to serve Defendant Knutson. Accordingly, Plaintiff's claims against this defendant should be dismissed without prejudice for want of prosecution.

B       Standard of Review Under Fed. R. Civ. P. 56(c)

The remaining defendants move for summary judgment. A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed. R. Civ. P. 56(e); Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely

whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

    C.    Heck v. Humphrey

It is well settled that, under Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87, 114 S. Ct. 2364; Randell v. Johnson, 227 F.3d 300, 301 (5th Cir. 2000); Sappington v. Bartee, 195 F.3d 234, 235 (5th Cir.1999). "Heck requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995) (citation omitted).  This requirement or limitation has become known as the "favorable termination rule." Sappington, 195 F.3d at 235.

As explained recently by the Fifth Circuit:

> The policy undergirding the favorable termination rule is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, 512 U.S. at 486, 114 S. Ct. 2364. This

6

principle is another manifestation of the doctrine of issue preclusion or collateral estoppel, i.e., the policy of finality that prevents the collateral attack of a criminal conviction once the matter has been litigated. See id. at 484-85, 114 S. Ct. 2364 ("[The Supreme] Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." (citations omitted)). The Heck Court determined that this principle of collateral estoppel "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Id. at 486, 114 S. Ct. 2364. If a judgment in the plaintiff's favor would necessarily imply that his conviction is invalid, then the § 1983 action is not cognizable unless the conviction were reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas proceeding. See id. at 487, 114 S. Ct. 2364; Hudson v. Hughes, 98 F.3d 868, 872 (5th Cir. 1996). Therefore, "[t]he maturity of a section 1983 claim ⋯ depends on 'whether a judgement in [the plaintiff's] favor ⋯ would necessarily imply the invalidity of his conviction.'" Hudson, 98 F.3d at 872 (alteration in original) (citing Heck, 512 U.S. at 487, 114 S. Ct. 2364).

Ballard v. Burton, ____ F.3d _____, 2006 WL 758105 at *4 (5th Cir. 2006).

Thus, in order to determine whether Heck's favorable termination rule precludes Plaintiff's § 1983 claim that Defendants used excessive force, the Court first must determine whether a judgment in Plaintiff's favor on this claim would necessarily imply the invalidity of Plaintiff's misdemeanor assault conviction.

Plaintiff was convicted of assault. The Texas Penal Code defines assault as intentionally, knowingly, or recklessly causing bodily injury to another. TEX. PENAL CODE § 22.01(a)(1). An offense under Texas Penal Code § 22.01(a)(1) is a Class A misdemeanor. Nothing in Heck and its progeny support the proposition that a § 1983 excessive force claim is barred merely because the same set of events give rise to both the criminal conviction and the excessive force claim.

The Court is of the opinion that Plaintiff's excessive use of force claim is not barred by Heck. Success on Plaintiff's excessive force claim would not necessarily invalidate his conviction for assaulting Officer Cunningham. Plaintiff alleges his excessive use of force claim arose during the

7

moments following his assault of Officer Cunningham. Specifically, he alleges, after he was placed in handcuffs and leg restraints and was no longer resisting, Officer Cunningham stomped on his head while several other officers beat and choked him. Because the alleged use of excessive force occurred after Plaintiff was placed in restraints and after he had assaulted Officer Cunningham, his excessive use of force claim is conceptually and temporally distinct from his conviction for assault and not barred by Heck.

>   D.   Qualified Immunity

Defendants Frasier, Cunningham, Arias, and Leo assert their entitlement to qualified immunity with respect to Plaintiff's claims against them in their individual capacities. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id. With respect to a ruling on qualified immunity, the first question a court should address is "whether the plaintiff has alleged a violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789 (1991); Hale v. Townley, 45 F.3d 914, 917 (5th Cir. 1995). If the Plaintiff has alleged a constitutional violation, the court must then determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions. Hale, 45 F.3d at 917, citing Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993), cert.

denied, 510 U.S. 1123, 114 S. Ct. 1081 (1994); Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993).

Claims of qualified immunity require a two step analysis.  As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  If the allegations do not establish the violation of a constitutional right, the official is entitled to qualified immunity.  Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.  If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established--that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156.  If an official makes a reasonable mistake as to what the law requires, the officer is entitled to immunity.  Id. at 205, 121 S. Ct. at 2158.  With these principles in mind, the Court will address the issue of Defendants' qualified immunity.

To state a claim for excessive force, Plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than de minimis, but not necessarily significant. Hudson v. McMillian, 503 U.S. 1, 6, 10, 112 S. Ct. 995 (1992); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). The factors to be considered are (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. Gomez, 163 F.3d at 923.

Plaintiff has failed to establish a constitutional violation on the part of Defendant Frasier. Plaintiff is attempting to hold Sheriff Frasier liable in her supervisory capacity. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship. Monell v. Department of Social Services, 436 U.S. 658, 693, 98 S. Ct. 2018, 2037 (1978); Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, she may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Id. at 304. Plaintiff has failed to provide a basis for holding Sheriff Frasier liable in this case.

Plaintiff has also failed to establish a constitutional violation on the part of Defendant Leo. Plaintiff admits in his deposition that Defendant Leo did not assault Plaintiff in any way and did not cause Plaintiff any physical injuries. See Defendants' Summary Judgment Evidence at Exhibit G at 57. The only complaint he has with regard to Defendant Leo is with regard to the surveillance video. Id. However, this loss of evidence is not an independent constitutional violation. In addition, Texas state courts have not recognized a state cause of action for spoliation of evidence. See Trevino v. Ortega, 969 S.W.2d 950, 952 (Tex. 1998). This is not to say that Plaintiff cannot request an instruction at trial regarding the alleged spoliation of evidence. Rather, Plaintiff simply has no cause of action for spoliation. Accordingly, Defendants Frasier and Leo are entitled qualified immunity protection.

Assuming the facts in the light most favorable to Plaintiff, Plaintiff has alleged a constitutional violation against Defendant Cunningham. Plaintiff has alleged Officer Cunningham maliciously and sadistically stomped on Plaintiff's head after Plaintiff had been restrained by hand and ankle cuffs and was no longer a threat to security or safety. As a result, Plaintiff alleges he suffered injuries requiring treatment at the hospital.

Plaintiff has also alleged a constitutional violation against Defendant Arias. Plaintiff alleges Arias was involved in his restraint and was likely the officer who choked Plaintiff after Plaintiff had been restrained. Plaintiff admits he cannot be sure who was choking or hitting him from behind because the surveillance tape is unavailable. In addition, to the injuries to his head Plaintiff alleges he injured his neck and back for which he also received medical treatment. Defendant Arias failed to provide the Court with his affidavit, so the Court is not certain to what extent Arias was involved. Nevertheless, Plaintiff has sufficiently alleged a constitutional violation on the part of Defendant Arias.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. Hope v. Pelzer, 536 U.S. 730, 740, 122 S. Ct. 2508 (2002). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. Anderson, 483 U.S. at 641.

Neither Defendant Cunningham nor Defendant Arias argue that any legal principle involved was not clearly established at the time of the use of force. Thus, whether their actions were objectively reasonable depend on whether these officers reasonably believed that Plaintiff posed a threat of imminent danger. Plaintiff alleges his head was stomped, he was beaten and he was choked after he was in restraints and no longer posed a threat. Defendant Cunningham provided his affidavit denying he used excessive force against Plaintiff and stating he did not see any other officer using unnecessary or excessive force against Plaintiff. Officer Miller, who assisted in restraining Plaintiff, provided a similar affidavit in which he denied using excessive force against Plaintiff and denied seeing Defendant Cunningham use excessive force against Plaintiff. Clearly, genuine issues of material fact exists as to whether Defendants Cunningham or Arias used excessive force against Plaintiff after Plaintiff had been restrained. Accordingly, Defendants Cunningham and Arias are not entitled to qualified immunity at this time.

E.   Travis County Liability

Plaintiff's claims against the defendants in their official capacities are the same as if brought against Travis County. A political subdivision, such as Travis County, cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; in other words a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior. Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). The standard for holding a local government unit responsible under § 1983 requires that there be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right. Id; Collins v. City of Harker Heights, Tex., 916 F.2d 284, 286 (5th Cir. 1990), aff'd, 503 U.S. 115, 112 S. Ct. 1061 (1992). Thus, Travis County would violate an individual's rights only through implementation of a formally declared

policy, such as direct orders or promulgations or through informal acceptance of a course of action by its employees based upon custom or usage. Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476 (1985). A single decision made by an authorized governmental decisionmaker to implement a particular course of action represents an act of official government "policy." Pembaur v. Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986). Plaintiff failed to identify a policy, practice or custom of Travis County that caused a deprivation of his constitutional rights. Accordingly, Plaintiff's claims against the defendants in their official capacities should be dismissed.

## RECOMMENDATION

The undersigned recommends that the District Court **DISMISS WITHOUT PREJUDICE** Plaintiff's claims brought against Defendant Knutson for want of prosecution, **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment, **DISMISS WITH PREJUDICE** Plaintiff's claims brought against Defendants in their official capacities, **DISMISS WITH PREJUDICE** Plaintiff's claims brought against Defendant Frasier and Leo in their individual capacities, and set this case for trial on Plaintiff's remaining claims brought against Defendants Cunningham and Arias in their individual capacities. The undersigned further recommends that the District Court appoint counsel to assist Plaintiff with discovery and the trial in this case.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);  <u>Douglass v. United Servs. Auto. Assoc.</u>, 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

The Clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 12th day of May, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE